1999 ND 33

**STATE of North Dakota, Plaintiff and Appellee,**

**v.**

**Jerry Jerome JOHNSON, Defendant and Appellant.**

Nos. 980173, 980174.

Supreme Court of North Dakota.

Feb. 23, 1999.

---

Robin Huseby, State's Attorney, Valley City, N.D., for plaintiff and appellee.

James A. Wentz, Jamestown, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Jerry Johnson appealed from the district court's judgment of conviction and sentence for possession of drug paraphernalia and two counts of possession of a controlled substance. Johnson contends the district court erred in denying his motion to suppress. We affirm.

I

[¶ 2] On April 9, 1997, a Barnes County deputy sheriff applied to a district court judge, acting as a warrant-issuing magistrate, for various search warrants. A 26–page affidavit supported the application for the search warrants, detailing a large conspiracy to manufacture, sell, buy, and use narcotics such as methamphetamine and marijuana. The affidavit also stated Johnson possessed guns, and some of Johnson's associates were considered dangerous and also possessed guns. The district court issued "no-knock" warrants.

[¶ 3] On April 12, 1997, the deputy and other law enforcement officers executed some of the search warrants, including the warrant for Johnson and his residence. As a result of the execution of the warrant, criminal charges were filed against Johnson. He was charged with "Possession of Drug Paraphernalia," a class A misdemeanor, and two counts of "Possession of a Controlled Substance," both class C felonies.

[¶ 4] Johnson left North Dakota in violation of federal probation and was apprehended by federal marshals in June 1997 and taken to Bismarck. In August 1997, Johnson was moved to the Stutsman County correctional center, and requested counsel. Johnson's attorney moved to suppress evidence and to dismiss the charges. The district court denied the motions by memorandum opinion.

[¶ 5] In February 1998, the charges against Johnson were tried to a jury. The jury found him guilty on all counts. The court sentenced him to the North Dakota Department of Corrections for three years without probation on the two felony charges, and to one year on the misdemeanor charge. The sentences were to run concurrently. Johnson appealed.

[¶ 6] The district court had jurisdiction under N.D.C.C. § 27–05–06. Johnson's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

II

██ [¶ 7] We do not reverse a district court's denial of a motion to suppress if " 'after conflicts in testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence.' " *State v. Erbele*, 554 N.W.2d 448, 450 (N.D.1996) (quoting *State v. Glaesman*, 545 N.W.2d 178, 181 (N.D.1996)).

A

██ [¶ 8] Johnson argues the no-knock warrants were issued "per se" in violation of recent North Dakota and United States Supreme Court decisions; that is, allowing forcible entry to execute a warrant in any case where narcotics are present, on the grounds that narcotics violators normally are on the alert to destroy the easily disposable evidence at the first sign of police officers and that narcotics violators are often armed and dangerous. Where mere probable cause was present to search for narcotics, warrants were issued allowing police to forego the knock-and-announce requirement. *See State v. Herrick*, 1997 ND 155, ¶ 21 n. 1, 567 N.W.2d 336. "Both the Fourth Amendment of the United States Constitution and Article I Section 8 of the North Dakota Constitution require all searches and seizures be reasonable. An element of this rule is officers entering a dwelling must knock and an-

nounce their presence." *State v. Herrick,* 1997 ND 155, ¶ 17, 567 N.W.2d 336 (citing *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995)). The rule of reasonableness is flexible, however, and does not always require officers to knock and announce prior to entry when law enforcement interests such as the safety of officers and integrity of evidence could be jeopardized. *Id.* (citing *Wilson,* at 934–36, 115 S.Ct. 1914; *State v. Knudson,* 499 N.W.2d 872, 876 (N.D.1993)).

[¶ 9] Prior to the decision in *Herrick,* but following the issuance of the warrant in this case, the United States Supreme Court clarified the application of no-knock warrants in drug cases. *Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). The Wisconsin Supreme Court had held "police are not required to adhere to the rule of announcement when executing a search warrant involving felonious drug delivery." *State v. Richards,* 201 Wis.2d 845, 549 N.W.2d 218, 227 (1996). Agreeing with the rationale of *Wilson,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976, the United States Supreme Court recognized no-knock warrants may be necessary in drug cases because the cases frequently involve the threat of physical violence and the likelihood of the destruction of evidence. *Richards,* 117 S.Ct. at 1420. The Court did not, however, agree with Wisconsin's per se rule, allowing the issuance of no-knock warrants in all narcotics cases. *Id.* at 1421. The Court held "in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement." *Id.*

[¶ 10] To justify the use of a no-knock warrant, law enforcement officers must have a reasonable suspicion the announcement of their presence would likely lead to their harm or to the destruction of evidence. *Id.* This requires the balancing of legitimate law enforcement interests and the privacy interests of the individual.

■ [¶ 11] The standard in North Dakota, however, is higher for no-knock warrants. [T]he clear language of section 19–03.1–32(3), N.D.C.C., requires "probable cause"

for the issuance of a no-knock warrant. Our decisions on the issuance of no-knock warrants speak in terms of probable cause. *See, e.g., State v. Borden,* 316 N.W.2d 93, 96 (N.D.1982); *State v. Loucks,* 209 N.W.2d 772, 776–77 (N.D.1973). Rule 41(c), N.D.R.Crim.P., which together with section 19–03.1–32(2), N.D.C.C., govern[s] the issuance of nighttime warrants, uses the term "reasonable cause shown" and we have construed this term synonymously with probable cause for the purpose of issuing a nighttime warrant under section 19–03.1–32(2). *Knudson,* 499 N.W.2d at 875. Insofar as there may be a conflict between section 29–29–08, N.D.C.C., a more general statute governing no-knock warrants, and section 19–03.1–32, N.D.C.C., the latter prevails with respect to offenses involving controlled substances. *Loucks,* 209 N.W.2d at 777. It is now axiomatic that the state may grant greater but not lesser protections than the United States Constitution. *State v. Matthews,* 216 N.W.2d 90, 99 (N.D.1974). Our legislature has done so. Probable cause is required for issuance of a no-knock warrant under section 19–03.1–32, N.D.C.C.

*Herrick,* 1997 ND 155, ¶ 19, 567 N.W.2d 336.

■ [¶ 12] The evidence presented to the issuing magistrate established probable cause to issue the no-knock warrants. The 26–page affidavit supporting the warrant request contained extensive evidence of drug activity and gun possession. Generally, a reasonable belief firearms are present within a residence, standing alone, is not enough to justify a no-knock warrant. *United States v. Murphy,* 69 F.3d 237, 244 (8th Cir.1995) (citation omitted). Where officers are aware of more than the mere presence of firearms, however, dispensing with the knock and announce requirement may be justified. *Id.* The police officers involved in this case relied on information provided by reliable confidential informants and upon their own knowledge of dangerous activities of Johnson and others. Intelligence information gathered by police found Jerry Johnson always carried a .357 Blackhawk pistol, Dawn Van Eaton (Wagner), Johnson's girlfriend, was reported to have been trying to buy M–16 machine

guns, and garbage can searches at Johnson's house revealed a "guns for sale" ad.

[¶ 13] The district court was well aware of drug activity and propensity for violence of some of the individuals listed in the warrants. *See also United States v. Bates*, 84 F.3d 790, 795 (6th Cir.1996) ("criminal record reflecting violent tendencies, or a verified reputation of a suspect's violent nature can be enough to provide law enforcement officers with justification to forego the necessity of knocking and announcing their presence"). All this information gave the police officers reasons to fear for their safety; therefore, the no-knock warrants were not issued "per se," and thus did not violate *Richards* and *Herrick.*

### B

[¶ 14] Johnson contends the warrant-issuing magistrate cannot act as the reviewing judge on a no-knock warrant. In support of his position, Johnson cites *State v. Hage*, 1997 ND 175, ¶ 9 n. 1, 568 N.W.2d 741: "[W]e are concerned that the same judge served as both the issuing magistrate and the reviewing trial judge. We encourage a judge in this situation to diligently attempt to have another judge review the issue of probable cause." Johnson did not make this objection in the district court.

[¶ 15] A warrant must be issued by a detached and neutral magistrate. N.D.R.Crim.P. 41; *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984). In *State v. Rydberg*, 519 N.W.2d 306, 308 (N.D.1994), we said "[t]he task of the issuing magistrate is to make a practical, commonsense decision whether, given all the information considered together, there is a fair probability contraband or evidence of a crime will be found in a particular place."

[¶ 16] A district court reviewing the validity of a search warrant decides whether the information before the magistrate established probable cause to search. *Rydberg*, 519 N.W.2d at 308.

> Probable cause to search does not require the same standard of proof necessary to establish guilt at trial; rather, probable cause to search exists if it is established that certain identifiable objects are proba-

bly connected with criminal activity and are probably to be found at the present time at an identifiable place.

*State v. Ringquist*, 433 N.W.2d 207, 212 (N.D.1988) (citation omitted). Probable cause to search exists if the facts and circumstances relied on by the magistrate would warrant a person of reasonable caution to believe the contraband or evidence sought probably will be found in the place to be searched. *State v. Mische*, 448 N.W.2d 415, 420 (N.D.1989); *Ringquist*, 433 N.W.2d at 212. *See State v. Mertens*, 268 N.W.2d 446, 450 (N.D.1978).

[¶ 17] Whether probable cause exists is a question of law. *Rydberg*, 519 N.W.2d at 308. On appeal, we use the totality-of-the-circumstances test to review the sufficiency of the information before the magistrate, independent of the district court's decision. "We give deference to a magistrate's factual findings in determining whether probable cause exists. If there is a substantial basis for the magistrate's conclusion that probable cause exists, we will not disturb that conclusion on appeal." *State v. Frohlich*, 506 N.W.2d 729, 732 (N.D.1993) (citations omitted).

[¶ 18] Here, the district court acted both as the warrant-issuing magistrate and as the reviewing judge. The only other North Dakota case mentioning this issue is *Hage*, 1997 ND 175, ¶ 9 n. 1, 568 N.W.2d 741, which encouraged the judge to attempt to have the ruling reviewed by another. This language was, however, merely advisory and cautionary and did not require the issuing judge to have the decision reviewed by someone else.

[¶ 19] In this case, there is no indication of bias, and the record shows the issuance of the warrant for Johnson was squarely grounded in probable cause. *See also United States v. Alton*, 982 F.2d 285, 287 (8th Cir.1992) (the same judge may review if probable cause is evident in the record and there is no showing of bias by the judge). This record is replete with facts giving rise to probable cause. The magistrate issued the no-knock warrant because of suspected drug activity and evidence of guns at the house. Also, law enforcement considered

Johnson's associates to be dangerous. A person's association with people thought to be dangerous is an appropriate consideration in finding probable cause and issuing a no-knock warrant for a specific place.

 [¶ 20] When the issuing magistrate has more than enough facts to establish probable cause, the unobjected-to review of a warrant by the issuer does not create a problem.

### C

 [¶ 21] Johnson argues he did not receive a speedy trial, guaranteed by the Sixth Amendment of the United States Constitution, and article I, section 12, of the North Dakota Constitution, and N.D.C.C. § 29-01-06(5). *State v. Murchison,* 541 N.W.2d 435, 438 (N.D.1995). Following United States Supreme Court precedent, *Murchison* outlined four factors to analyze the validity of a speedy trial claim: length of the delay, reason for the delay, proper assertion of the right, and actual prejudice to the accused. *Murchison,* at 438 (citing *Barker v. Wingo,* 407 U.S. 514, 531-33, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)); *see also State v. Sahr,* 470 N.W.2d 185, 187 (N.D.1991). As we explained in *State v. Connery,* 441 N.W.2d 651, 655 (N.D.1989), each factor must be weighed, but "no single factor is controlling."

[¶ 22] Johnson's case proceeded on a timely basis, and some of the delays were Johnson's fault. Johnson did not inform the district court of his change of address when he was transported from Burleigh County; he did not object when hearings were rescheduled at a later date; and, he did not request from the district court any immediate disposition of the charges during his preliminary hearings.

[¶ 23] The right to a speedy trial is further qualified by the Uniform Mandatory Disposition of Detainers Act, N.D.C.C. ch. 29-33. Under the Detainers Act, prisoners must follow certain steps to request a final disposition of any untried charge against them. N.D.C.C. ch. 29-33. The record in this case shows Johnson did not follow the requirements of the statute. In *State v. Moe,* 1998 ND 137, ¶ 23, 581 N.W.2d 468, we stated the defendant did not properly comply with the Detainers Act, and his right to a speedy trial was not denied.

[¶ 24] We conclude Johnson was not denied his right to a speedy trial under the Constitution or the Detainers Act.

### III

[¶ 25] We affirm the decision of the district court.

[¶ 26] VANDE WALLE, C.J., and NEUMANN, MARING and KAPSNER, JJ., concur.